ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11-21-11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - -x
POPE INVESTMENTS II LLC, JAYHAWK
PRIVATE EQUITY FUND, L.P., GUERILLA
PARTNERS, L.P., ALDER CAPITAL PARTNERS
I, L.P., ALDER OFFSHORE MASTER FUND,
L.P., PARAGON CAPITAL, L.P., DAYBREAK
SPECIAL SITUATIONS MASTER FUND, LTD.,
AAMAXEN TRANSPORT GROUP, INC., ASIA
BUSINESS MANAGEMENT GROUP, LTD., and
SHANGHAI ANHANTE (BEIJING) MEDICAL
TECHNOLOGY CO., LTD.,

                    Plaintiffs,         10 Civ. 6608 (LLS)

    - against -               OPINION AND ORDER

DEHENG LAW FIRM, HELEN LV, BELMONT
PARTNERS, LLC, ROSEWOOD SECURITIES,
LLC, SOUTHERN TRUST SECURITIES HOLDING
CORP., JOSEPH MEUSE, WILLIAM H. LUCKMAN,
GUZOV OFSINK, LLC, and DARREN L. OFSINK,

                    Defendants.
- - - - - - - - - - - - - - - - - - - - -x

      Plaintiffs sue defendants, who are professionals and firms who advised plaintiffs in transactions that allegedly ended in the embezzlement by non-party Shao Gan Hua ("Shao") of over $10 million, for securities fraud under section 10(b) of the Securities and Exchange Act and Rule 10b-5 thereunder. Plaintiffs also assert various common law claims.

      Section 10(b) makes unlawful, "in connection with the purchase or sale of any security," the use of "any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission [i.e., the Securities

and Exchange Commission] may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b) (2006). Under Rule 10b-5, 17 C.F.R. § 240.10b-5 (2011),

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device scheme or artifice to defraud,
>
> (b) To make an untrue statement of material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of a security.

Defendants[1] move under Fed. R. Civ. P. 12(b)(6), 9(b), and the Private Securities Litigation Reform Act ("PSLRA") of 1995, 15 U.S.C. § 78u-4(b)(3)(A) (2006), to dismiss the amended complaint. Deheng Law Firm, William Luckman, and Darren Ofsink each move under Rule 12(b)(4) to dismiss the amended complaint; Deheng also moves under Rule 12(b)(2).

Defendants' primary argument is that plaintiffs do not plead (as they must in order to hold defendants accountable for Shao's embezzlement) particular facts giving rise to a strong

---

[1] Plaintiffs have not served defendant Lv with the amended complaint, and accordingly she does not move to dismiss it. The term "defendants" thus refers to all defendants other than Lv.

2

inference that defendants acted with scienter, or guilty knowledge. Specifically, they contend that plaintiffs' allegation that defendants' sole benefit from the transactions was the receipt of professional fees fails to charge that defendants had a motive to commit the fraud. They further argue that plaintiffs do not allege any specific document or report from which defendants could have learned of the fraud.

### The Amended Complaint's Allegations

### The SMT Transactions

Plaintiffs Pope Investments II LLC, Jayhawk Private Equity Fund, L.P., Guerilla Partners, L.P., Alder Capital Partners I, L.P., Alder Offshore Master Fund, L.P., Paragon Capital, L.P., and Daybreak Special Situations Master Fund, Ltd. (collectively, the "Investors" or the "AAXT Investors"), who are entities organized or operating in the United States, sought to acquire Shanghai Atrip Medical Technology Co., Ltd. ("SMT"), a Chinese medical distribution company.

The Investors "utilized a common corporate investment structure for non-Chinese investors that invest in Chinese companies," Am. Compl. ¶ 50, which required that three simultaneous transactions be executed on April 14, 2008 (the "SMT Transactions"). Plaintiff Aamaxen Transport Group, Inc. ("AAXT") acquired plaintiff Asia Business Management Group, Ltd. ("ABM") and its wholly owned subsidiary, plaintiff Shanghai

3

Anhante (Beijing) Medical Technology Co., Ltd. ("Anhante"). Anhante simultaneously contracted to purchase SMT, and the Investors purchased shares in AAXT in order to acquire an ownership interest in SMT. The precise mechanics of the SMT Transactions are as follows:

AAXT transferred 16,607,143 of its shares to Kamick Assets Limited, a company wholly owned by Shao, in exchange for Kamick's wholly owned subsidiary ABM and ABM's wholly owned subsidiary Anhante. (ABM, AAXT, and Anhante are referred to collectively as the "Group.")

The Investors purchased 4,008,188 shares of AAXT (the "AAXT Investment") for $12.5 million. The net proceeds of that transaction were deposited into ABM's bank account.

Anhante contemporaneously contracted with SMT to transfer the net proceeds of the AAXT Investment to SMT in exchange for "substantially all of" SMT's "economic benefits and liabilities." Id. ¶ 27.

Upon the closing of the AAXT Investment, Chen Zhong ("Chen"), the principal owner of SMT, became Chairman and CEO of AAXT. He was also granted a call option, which allowed him to purchase all outstanding Kamick stock from Shao over a two-year period if SMT met certain targets.

**Defendants' Involvement**

Plaintiffs retained defendants to assist with the SMT

4

Transactions: defendants Deheng Law Firm (a Chinese law firm) and Guzov Ofsink ("Guzov," an American law firm) advised the Group and SMT in AAXT's acquisition of SMT. Defendant Lv was a partner at Deheng who worked on the SMT Transactions. Defendant Darren Ofsink ("Ofsink"), a member of Guzov, was lead counsel to the Group.

Guzov and Deheng drafted the necessary contracts and advised the Group and SMT "on the form and substance of contractual agreements necessary for AAXT to become the beneficial owner of SMT's business and for AAXT to issue convertible preferred securities to the AAXT Investors and other investors in AAXT." Id. ¶ 50.

Deheng issued a legal opinion to the Investors "concerning: (1) the legal ownership structure of the companies; (2) the legality and validity of the restructuring agreements; (3) and the transaction structure by which the AAXT Investors were to invest money in AAXT to receive an investment interest in SMT through" Anhante. Id. ¶ 52. Guzov issued a legal opinion to the Investors, stating "that the transaction documents were effective, legal and binding." Id. ¶ 54.

Defendant Belmont Partners, LLC, an investment bank, provided "business and structuring advice regarding the SMT Transactions" to the Group and SMT. Id. ¶ 48. Defendants Rosewood Securities LLC and Southern Trust Securities Holding

5

Corp. are affiliated with Belmont.[2] Defendants Meuse and Luckman "are and/or were employees and/or owners of Belmont," and "personally performed or supervised all the work done on Belmont's behalf with respect to the SMT Transactions." Id. ¶ 56.

According to the amended complaint,

> Belmont solicited investors to make the AAXT Investment, including the AAXT Investors; helped negotiate the terms of the SMT Transactions; secured the AAXT shell company used as the investment vehicle for the transaction; drafted documents for the SMT Transactions; investigated and reported to the AAXT Investors on the fiscal health and reputation of the Group; and made trips to Shanghai to conduct due diligence on SMT's assets and operations.

Id. ¶ 55.

Defendants conducted an "investment presentation" in order to convince the Investors to purchase AAXT stock. Defendants also sold AAXT shares through "written and oral communications prepared and transmitted to the SEC and to the AAXT Investors." Id. ¶ 72.

For their professional services, "Belmont earned fees in excess of $1 million upon the closing of the SMT Transactions. Guzov earned fees of approximately $200,000 in connection with the SMT Transactions. Deheng earned an uncertain amount of fees in connection with the SMT Transactions." Id. ¶ 61.

---

[2] The amended complaint refers to Belmont Partners, Rosewood Securities, and Southern Trust collectively as "Belmont."

## The Alleged Fraud

The SMT Transactions were designed so that as of April 14, 2008, Shao would own 100% of Kamick, which was the controlling shareholder of AAXT, which in turn wholly owned ABM and Anhante, and Anhante would own SMT upon the transfer of the proceeds of the AAXT Investment from ABM's bank account to SMT.

"Shao and Kamick were supposed to be nominees but not have any control over ABM. Chen was supposed to have control of ABM as the CEO of AAXT." Id. ¶ 31.

However, Shao or Kamick secretly retained control of ABM's bank account, which allowed Shao to embezzle the proceeds of the AAXT investment. Thus, only "a small portion of the over $10 million in investment proceeds was forwarded to SMT at some time prior to September 4, 2008." Id. ¶ 36. The Investors discovered this when, "In an email dated September 18, 2008, Lv advised the AAXT Investors that most or all the money they had invested in AAXT and ultimately intended for SMT had been invested elsewhere, contrary to the terms of the Transaction Documents and SEC filings." Id. ¶ 38.

The amended complaint alleges that, unbeknownst to the Investors, Lv is Shao's wife and helped him embezzle the money, and that Deheng advised Kamick or Shao to do so:

> 41. Shao and/or Kamick misappropriated most or all of the AAXT Investment without the consent of the AAXT Investors in blatant violation of the Transaction

>Documents between the parties, based on Deheng's advice. On information and belief, on the advice of Deheng, Shao and/or Kamick diverted that money into Shao's own personal bank accounts in his name, other entity accounts controlled by Shao, and also into at least one account controlled by Lv.
>
>42. The funds which Shao embezzled have since been dissipated through hundreds of ATM withdrawals in the PRC [People's Republic of China] and Hong Kong, wire transfers to other entities, and other purchases. A portion of the embezzled funds were transferred directly to Jerga Management Limited, a company in which Lv of Deheng acts as a director and has an express financial interest.
>
>. . . .
>
>46. Helen Lv ("Lv") was one of the Deheng attorneys assigned by Deheng to represent the Group in connection with the SMT Transactions. At the time of the closing of the SMT Transactions, Lv was a partner at Deheng and was close personal friends with Shao, the sole shareholder of Kamick, a fact never disclosed to or known by the Group or the AAXT Investors at such time. Documents later discovered within the scheme identify Lv as Shao's wife.[3]

The Investors have been unsuccessful in reclaiming their investment from Shao and Lv. They, along with AAXT, ABM, and Anhante, now sue defendants to recover the full amount of the AAXT investment.

Plaintiffs allege that defendants defrauded the Investors and the Group in violation of section 10(b) of the Exchange Act and Rule 10b-5 as follows:

>91. By representing that Deheng, Lv, Belmont, Meuse, Luckman, Guzov and Ofsink were providing advice

---

[3] The allegations against Lv are not challenged, since Lv still has not been served and thus does not move to dismiss any portion of the amended complaint. See supra note 1.

8

for the AAXT Investors' investment in SMT through the purchase of shares in AAXT, by falsely representing that Shao would not be able to control the invested funds, and also by advising Shao to misappropriate the investment funds away from SMT and failing to warn the AAXT Investors that such were Shao's intentions, defendants engaged in an act, practice, or course of business that operated as a fraud or deceit upon the AAXT Investors in connection with the purchase of a security.

. . . .

115.   By representing that Deheng, Lv, Belmont, Meuse, Luckman, Guzov and Ofsink were providing advice for the Group's investment in SMT, by advising Shao to misappropriate the investment funds away from SMT, by falsely representing that Shao would cede control over ABM to Chen and failing to warn AAXT of Shao's control over ABM's bank accounts and the risk of such misappropriation, and by falsely representing that defendants had fully vetted Kamick and Shao, defendants engaged in an act, practice, or course of business that operated as a fraud or deceit upon the Group in connection with the purchase of a security.

Plaintiffs also allege fraudulent inducement. The Investors assert a breach of contract claim. The Group asserts claims for negligent misrepresentation, breach of fiduciary duty, conversion, rescission, legal malpractice by Deheng, Lv, Guzov, and Ofsink, and professional malpractice by Belmont, Southern Trust, Rosewood, Meuse, and Luckman.

### Legal Standard

"When reviewing a motion to dismiss, a court must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint

liberally." Rescuecom Corp. v. Google Inc., 562 F.3d 123, 127 (2d Cir. 2009) (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

Plaintiffs in this securities fraud action for monetary damages must comply with Fed. R. Civ. P. 9(b), which requires that plaintiffs "state with particularity the circumstances constituting fraud," and the PSLRA, which requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," 15 U.S.C. § 78u-4(b)(2)(A) (2011 Supp.). The required state of mind for a securities fraud claim is scienter – the "intent 'to deceive, manipulate, or defraud,' or knowing misconduct." Press v. Chem. Inv. Servs. Corp., 166 F.3d 529, 538 (2d Cir. 1999), quoting SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1467 (2d Cir. 1996). If the allegations do not create a strong inference of scienter, the court must dismiss the amended complaint. See 15 U.S.C. § 78u-4(b)(3)(A).

## Discussion

### A.

Plaintiffs claim that they have alleged scienter by

pleading that defendants intentionally or recklessly led plaintiffs to believe that the SMT Transactions were not part of a fraudulent scheme, and that defendants had a motive and opportunity to commit fraud.

1.

Plaintiffs allege, on "information and belief," that Deheng advised "Shao and/or Kamick" to misappropriate "most or all of the AAXT investment without the consent of the AAXT Investors," and to divert "that money into Shao's own personal bank accounts in his name, other entity accounts controlled by Shao, and also into at least one account controlled by Lv." Am. Compl. ¶ 41.

Under the PSLRA, "if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). The amended complaint states multiple times that Deheng represented Shao and Kamick, and that it advised Kamick to "divert" or "misappropriate" the funds. See Am. Compl. ¶¶ 39, 63-64. There are no allegations, however, of particularized facts forming the basis for the belief that Deheng provided that advice.

The allegations that Deheng advised Shao and Kamick to embezzle the invested funds thus fail to state a claim under the PSLRA. See Xerion Partners, I v. Resurgence Asset Mgmt., 474 F. Supp. 2d 505, 519 (S.D.N.Y. 2007) ("These allegations are pled

11

on information and belief only, without any particularized facts, and thus fail to state a claim for securities fraud.").

2.

Plaintiffs cite the following allegations in the amended complaint to support their argument that "defendants knowingly communicated false information to plaintiffs that the structure was sound and that the invested funds would flow directly from the investors' American company to Chen, the owner of the targeted company in China (SMT)," Pls.' Opp. 16, Opp. to Deheng 27[4]:

> 72. The securities described in Paragraphs 21-33 above were sold by means of an investment presentation, an information statement dated April 11, 2008 and filed pursuant to the Securities and Exchange Act of 1934 and Rule 14F-1 thereunder, and other written and oral communications prepared and transmitted to the SEC and to the AAXT Investors in February, March and April 2008 (collectively, "the AAXT Investment Communications") by Deheng, Lv, Belmont, Meuse, Luckman, Guzov and Ofsink.
>
> 73. These AAXT Investment Communications falsely claimed that all or most of the funds invested in ABM via AAXT would be used to control and operate SMT, falsely represented that Shao would cede control of ABM to Chen, and failed to disclose to the AAXT Investors that Shao retained control of the ABM bank account and did not intend to invest all of the net investment proceeds in SMT.
>
> . . . .

---

[4] Plaintiffs filed separate briefs opposing each individual motion to dismiss; however, the section discussing securities fraud is identical in each opposition brief. Thus, in discussing securities fraud, all references to Pls.' Opp. refer to all of the plaintiffs' opposition briefs, with a parallel citation to the opposition to Deheng's motion, which is paginated differently.

12

> 75. Deheng, Lv, Belmont, Meuse, Luckman, Guzov and Ofsink falsely represented via the AAXT Investment Communications that the AAXT Investors' funds would be invested in SMT, failed to disclose that Shao retained control of the ABM bank account, and failed to disclose to the AAXT Investors that Shao did not intend to invest all of the net investment proceeds in SMT.
>
> . . . .
>
> 81. Deheng, Lv, Belmont, Meuse, Luckman, Guzov and Ofsink falsely represented that all the Group's funds would be invested in SMT and failed to disclose to the Group that Shao retained control of ABM's bank accounts and in fact intended to invest little or nothing in SMT.

Plaintiffs cannot plead scienter by merely alleging that defendants knew that the invested funds would not flow to SMT and that Shao would maintain control of ABM's bank account: "Where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information." Novak v. Kasaks, 216 F.3d 300, 309 (2d Cir. 2000). The amended complaint does not specifically identify any report or statement from which defendants should have learned that Shao intended to embezzle the money or that the SMT Transactions were a sham, or that the invested funds were not flowing as intended. Accordingly, those allegations do not give rise to a strong inference that defendants knowingly misrepresented the legitimacy of the SMT Transactions.

The allegations that defendants failed to vet Shao or were

13

reckless in their vetting process similarly fail to state the source from which defendants might have learned of the fraud.

Plaintiffs plead that "defendants were obligated to promptly disclose to the Group, their respective officers and directors all material facts concerning Shao, his personal relationship with Lv, Shao's control over ABM's bank accounts, and Shao's management and control of Kamick, its financial condition, and its relations with regulatory bodies in PRC and Hong Kong," Am. Compl. ¶ 140, and that defendants should have known that information because of their "access to books and records and other sources of knowledge concerning the financial and operating condition of Kamick and SMT," id. ¶ 139. However, to create a strong inference of scienter, plaintiffs must "specifically identify" the documents from which defendants could have learned of the alleged fraud. See Novak, 216 F.3d at 309. Generalized assertions of access to "books and records and other sources of knowledge" are thus insufficient to plead scienter, because they do not show that those "books and records and other sources of knowledge" would reveal Shao's intended diversion of the funds.

Likewise, the allegation that defendants "knew or should have known that Shao retained control of ABM's accounts," Am. Compl. ¶ 60, without more, does not give rise to a strong inference of defendants' scienter. As the Court of Appeals has

14

stated, "in the context of securities fraud claims," allegations "that Defendants knew but concealed some things, or knew or were reckless in not knowing other things," "are so broad and conclusory as to be meaningless." Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1129 (2d Cir. 1994) (internal quotation marks omitted).

### 3.

To plead motive, plaintiffs must allege "that defendants benefitted in some concrete and personal way from the purported fraud." Novak, 216 F.3d at 307-08. Plaintiffs argue that defendants'

> motive is found in the fact that defendants would only realize economic benefit from the deal if it closed, and defendants knew the deal would not close if plaintiffs knew that the money would not go directly from the American investment vehicle to an entity controlled by Chen or that due diligence had not been performed on Shao.

Pls.' Opp. 10-11, Opp. to Deheng 21(emphasis omitted).

However, "allegations of the motivation to receive fees for services" do not "suffice to establish motive," as "All firms in the securities industry want to increase profits and all individuals are assumed to desire to increase their compensation." In re Merrill Lynch & Co. Research Reports Sec. Litig., 289 F. Supp. 2d 416, 428 (S.D.N.Y. 2003). As the court stated in Friedman v. Ariz. World Nurseries Ltd., 730 F. Supp. 521, 532 (S.D.N.Y. 1990), aff'd, 927 F.2d 594 (2d Cir. 1991)

(unpublished table decision):

> It would defy common sense to hold that the motive element of the Beck[5] scienter analysis would be satisfied merely by alleging the receipt of normal compensation for professional services rendered, because to do so would effectively abolish the requirement, as against professional defendants in a securities fraud action, of pleading facts which support a strong inference of scienter.

Because plaintiffs do not allege that defendants possessed any motive other than receipt of professional fees, they do not plead that defendants had a motive to commit securities fraud.

Accordingly, plaintiffs' claims under section 10(b) and Rule 10b-5 are dismissed for failure to plead with particularity allegations giving rise to a strong inference that defendants acted with scienter.

## The State Law Claims

With that dismissal no federal statutory claim remains, and the complaint does not allege diversity of citizenship. "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3) (2006). That is the general practice and I follow it here, declining to exercise supplemental jurisdiction over plaintiff's state law claims.

---

[5] Beck v. Mfrs. Hanover Trust Co., 820 F.2d 46, 50 (2d Cir. 1987) ("A common method for establishing a strong inference of scienter is to allege facts showing a motive for committing fraud and a clear opportunity for doing so."), overruled on other grounds by United States v. Indelicato, 865 F.2d 1370 (2d Cir. 1989) (en banc).

See Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").

### Leave to Replead

Plaintiffs request leave to replead if any of their claims is dismissed. Defendants offer no persuasive reason why amendment would be futile. Accordingly, plaintiffs are granted leave to replead by filing a second amended complaint within 30 days from the date of this opinion and order.

### Conclusion

Defendants' motions to dismiss the amended complaint (Dkt. Nos. 56, 64, 67, 69, and 76) are granted, and plaintiffs' request for leave to replead is granted.

Since there has been no occasion in this case to consider or adjudicate any questions of derivative liability of Deheng (which may not even be subject to the jurisdiction of this court) for any acts of Lv (who, as noted, has not been served, has made no motion, and is not involved in this opinion or adjudication, see supra note 1), dismissal of the present claims is without prejudice as to those defendants.

So ordered.

Dated:   New York, New York
         November 18, 2011

                                        *Louis L. Stanton*
                                         Louis L. Stanton
                                            U.S.D.J.