

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - -X
POPE INVESTMENTS II, LLC, JAYHAWK PRIVATE
EQUITY FUND, L.P., GUERILLA PARTNERS,
L.P., ALDER OFFSHORE MASTER FUND, L.P.,
PARAGON CAPITAL, L.P., DAYBREAK SPECIAL
SOLUTIONS MASTER FUND, LTD., AAMAXEN
TRANSPORT GROUP, INC., ASIA BUSINESS
MANAGEMENT GROUP, LTD., and SHANGHAI
ANHANTE (BEIJING) MEDICAL TECHNOLOGY
CO., LTD.,

                   Plaintiffs,          10 Civ. 6608 (LLS)

     - against -                 OPINION AND ORDER

DEHENG LAW FIRM and HELEN LV,

                   Defendants,
- - - - - - - - - - - - - - - - - - - - - -X

    Plaintiffs' first amended complaint in this securities fraud action did not allege with particularity that these and other defendants acted with scienter in committing the alleged securities fraud.[1] I dismissed that claim under Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act ("PSLRA") of 1995, 15 U.S.C. § 78u-4(b)(3)(A), declined to exercise supplemental jurisdiction over plaintiffs' state law claims, and granted plaintiffs leave to replead. See Pope Invs. II LLC v. Deheng Law Firm, 10 Civ. 6608 (LLS), 2011 WL 5837818 (S.D.N.Y.

---

[1] Plaintiffs' claim is brought under section 10(b) of the Securities and Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 thereunder. The elements of such a claim are that the defendants "(1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury." Lentell v. Merrill Lynch & Co., 396 F.3d 161, 172 (2d Cir. 2005) (internal quotation marks omitted).

1

Nov. 21, 2011).

Plaintiffs' second amended complaint did not sufficiently allege a domestic securities transaction, as required by Morrison v. National Australia Bank Ltd., 130 S. Ct. 2869 (2010). I dismissed plaintiffs' securities fraud claim under Morrison, again declined to exercise supplemental jurisdiction over plaintiffs' state law claims, and granted plaintiffs leave to replead. See Pope Invs. II LLC v. Deheng Law Firm, 10 Civ. 6608 (LLS), 2012 WL 3526621 (S.D.N.Y. Aug. 15, 2012).

Plaintiffs have filed a third amended complaint, which Deheng moves to dismiss, arguing that its additional allegations do not sufficiently allege Deheng's scienter and do not sufficiently allege a domestic securities transaction, and thus do not cure the defects of the first and second amended complaints. Deheng incorporates by reference its arguments asserted in its motions to dismiss the first and second amended complaints - that Deheng is not subject to personal jurisdiction in New York, that Deheng was never served with process in this action, that the parties should be compelled to arbitrate in China, and that plaintiffs fail to state a claim upon which relief can be granted - which were unnecessary to reach in prior opinions.

## Background

### The SMT Transactions

The alleged fraud arises out of a series of transactions designed to acquire a Chinese company. Plaintiffs Pope Investments II LLC, Jayhawk Private Equity Fund, L.P., Guerilla Partners, L.P., Alder Capital Partners I, L.P., Alder Offshore Master Fund, L.P., Paragon Capital, L.P., and Daybreak Special Situations Master Fund, Ltd. (collectively, the "Investors" or the "AAXT Investors"), who are entities organized or operating in the United States, sought to acquire Shanghai Atrip Medical Technology Co., Ltd. ("SMT"), a Chinese medical distribution company.

For the purpose of acquiring SMT, the Investors paid $12.5 million in a private placement for shares of plaintiff Aamaxen Transport Group, Inc. ("AAXT"), a Delaware corporation with principal place of business in Memphis, Tennessee. AAXT simultaneously bought from Kamick Assets Limited,[2] and now wholly owns, plaintiff Asia Business Management Group, Ltd. ("ABM"), a British Virgin Islands company with principal place of business in British Virgin Islands. In turn, ABM wholly owns Shanghai Anhante (Beijing) Medical Technology Co., Ltd. ("Anhante"), which simultaneously purchased the "economic benefits and

---

[2] Kamick Assets Limited is owned by non-party Shao Gann Hua ("Shao"), who allegedly misappropriated and absconded with the money paid for ABM. See "The Alleged Fraud" below.

3

liabilities", Third Am. Compl. ¶ 34, of its business from SMT.

Although AAXT's stock is sold on the Over-the-Counter Bulletin Board ("OTCBB"), Third Am. Compl. ¶ 18, the AAXT Investors purchased their shares in AAXT through a private placement transaction, see AAXT Form SC 14F1, Apr. 11, 2008, Rubenstein Decl. Ex. I. Plaintiffs do not allege that any of the stock transferred in the SMT Transactions was sold on a securities or over-the-counter exchange.

### Deheng and Lv

Deheng "is a global partnership headquartered in Beijing, PRC [i.e., People's Republic of China], with branches in locations around the world including New York, New York." Third Am. Compl. ¶ 11.

"Deheng represented the Group and SMT as legal counsel in connection with the SMT Transactions." Id. ¶ 51. "Lv was one of the lead Deheng attorneys assigned by Deheng to represent the Group in connection with the SMT Transactions." Id. ¶ 52.

"Deheng took a primary role in structuring the SMT Transactions. Deheng drafted the Securities Purchase Agreement, the China Control Agreement and other transaction documents used in the SMT Transactions (the 'Transaction Documents')." Id. ¶ 54. Deheng further "advised the Group and SMT on the form and substance of contractual agreements necessary" to consummate the

transaction and "regarding the legality and validity of the Investment Structure." Id. ¶ 55.

> 57. Deheng drafted a confidential legal opinion addressed to the Group and SMT ("Deheng Legal Opinion"), including each AAXT Investor and other investors listed on the Securities Purchase Agreement for AAXT concerning: (1) the legal ownership structure of the companies; (2) the legality and validity of the restructuring agreements; (3) and the transaction structure by which the AAXT Investors were to invest money in AAXT to receive and investment interest in SMT through . . . Anhante. . . .
>
> 58. The Deheng Legal Opinion was intended to be used and was in fact used to induce the AAXT Investors to invest in the Group and SMT.

"Deheng earned an uncertain amount of fees in connection with the SMT Transactions." Id. ¶ 62.

### The Alleged Fraud

"At some time during 2007, Shao consulted with Lv at Deheng regarding his intention to embezzle the money invested by the AAXT Investors in AAXT away from the Group." Id. ¶ 42. Although Shao and Lv were close and perhaps were married to each other, they never disclosed that fact to the AAXT Investors or the Group.

"Shao and Kamick were supposed to be the nominees of but not have any control over ABM. Chen was supposed to have control over ABM as CEO of AAXT." Id. ¶ 38. However, "Shao and/or Kamick in fact retained control over ABM and its bank

5

account," id. ¶ 39, and eventually stole the proceeds of the AAXT Investment, which had been deposited in ABM's bank accounts:

> 48. Shao, Kamick, Lv and/or Deheng misappropriated most or all of the AAXT Investment without the consent of the AAXT Investors and in blatant violation of the Transaction Documents between the parties, based on Deheng's advice. On information and belief, on the advice of Deheng, Shao and/or Kamick diverted that money into Shao's own personal bank accounts in his name, other entity accounts controlled by Shao, and also into at least one account controlled by Lv.
>
> 49. The funds which Shao embezzled have since been dissipated through hundreds of ATM withdrawals in the PRC and Hong Kong, wire transfer to other entities, and other purchases. A portion of the embezzled funds were transferred directly to Jerga Management Limited, a company in which Lv of Deheng acts as a director and has an express financial interest. In this way, Lv, as a partner of Deheng, benefitted directly from the fraud itself.

The AAXT Investors' subsequent investigation revealed "that the vast majority of the stolen money was transferred into bank accounts controlled by Shao and Deheng law partner Lv." Id. ¶ 50.

The AAXT Investors and the Group each allege one count of securities fraud:

> 87. By representing that defendants were providing advice for the AAXT Investors' investment in SMT through the purchase of shares in AAXT, by falsely representing that Shao would not be able to control the invested funds, and also by advising Shao to misappropriate the investment funds away from SMT and failing to warn the AAXT Investors that such were Shao's intentions, defendants engaged in an act, practice, or course of business that operated as a

6

fraud or deceit upon the AAXT Investors in connection with the purchase of a security.

. . . .

105.  By representing that defendants were providing advice for the Group's investment in SMT, by advising Shao and Lv to misappropriate the investment funds away from SMT, by advising Shao and Lv to misappropriate the investment funds away from SMT, by falsely representing that Shao would cede control over ABM to Chen and failing to warn AAXT of Shao's control over ABM's bank accounts and the risk of such misappropriation, and by falsely representing that defendants had fully vetted Kamick and Shao, defendants engaged in an act, practice, or course of business that operated as a fraud or deceit upon the Group in connection with the purchase of a security.

Plaintiffs also plead various common-law claims and allege that they fall within the Court's supplemental jurisdiction.

## Discussion

"When reviewing a motion to dismiss, a court must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." Rescuecom Corp. v. Google Inc., 562 F.3d 123, 127 (2d Cir. 2009) (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544,

7

570 (2007).

Plaintiffs in this securities fraud action must comply with Fed. R. Civ. P. 9(b), which requires that plaintiffs "state with particularity the circumstances constituting fraud," and the PSLRA, which requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," 15 U.S.C. § 78u-4(b)(2)(A) (2011 Supp.). The required state of mind for a securities fraud claim is scienter – the "intent 'to deceive, manipulate, or defraud,' or knowing misconduct." Press v. Chem. Inv. Servs. Corp., 166 F.3d 529, 538 (2d Cir. 1999), quoting SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1467 (2d Cir. 1996). If the allegations do not create a strong inference of scienter, the court must dismiss the amended complaint. See 15 U.S.C. § 78u-4(b)(3)(A).

## The Securities Fraud Claims

### A.

The Supreme Court held in Morrison v. National Australia Bank Ltd., 130 S. Ct. 2869 (2010), that "Section 10(b) reaches the use of a manipulative or deceptive device or contrivance only in connection with the purchase or sale of a security listed on an American stock exchange, and the purchase or sale of any other security in the United States." Id. at 2888.

8

In the opinion dismissing the second amended complaint, I held that "plaintiffs do not plead a domestic securities transaction by alleging that AAXT lists its shares on the domestic OTCBB," Pope Invs. II LLC v. Deheng Law Firm, 10 Civ. 6608 (LLS), 2012 WL 3526621, at *12 (S.D.N.Y. Aug. 15, 2012), and that in order to satisfy Morrison, plaintiffs must plead "facts sufficient to create a plausible inference that the securities transaction occurred in the United States," id. at *13.

In this Circuit, "to sufficiently allege a domestic securities transaction in securities not listed on a domestic exchange, . . . a plaintiff must allege facts suggesting that irrevocable liability was incurred or title was transferred within the United States." Absolute Activist Value Master Fund Ltd. v. Ficeto, 677 F.3d 60, 68 (2d Cir. 2012) (complaint must allege "that the purchaser incurred irrevocable liability within the United States to take and pay for a security, or that the seller incurred irrevocable liability within the United States to deliver a security").

The second amended complaint did not adequately allege a domestic securities transaction because:

> Plaintiffs do not allege facts creating a plausible inference that the AAXT Investors incurred irrevocable liability to purchase the shares within the United States: they allege that Deheng drafted the Securities

9

> Purchase Agreement, presumably in China, and they do not allege where that agreement was negotiated or signed. The Court therefore cannot determine where a "commitment" or "meeting of the minds" occurred[,]

Pope Invs. II LLC v. Deheng Law Firm, 2012 WL 3526621, at *14, and made "no allegations regarding the transfer of title of AAXT's shares, and thus they do not create a plausible inference that title was transferred in the United States," id. at 17.

In addition to the allegations in the second amended complaint, plaintiffs now also allege (third amended complaint) that:

> 20. In accordance with Section 1.4 of the Securities Purchase Agreement, the closing of the AAXT investment occurred at the law offices of Guzov Ofsink, LLC, 600 Madison Avenue, 14th Floor, New York, NY 10022 at 2:00pm, New York time, on April 14, 2008 (the "Closing").
>
> 21. The Closing occurred upon the satisfaction of all of the conditions set forth in Article IV of the Securities Purchase Agreement, including the payment by each of the AAXT Investors' of the Purchase Price pursuant to Section 4.1 thereof.
>
> 22. Under Section 4.1 of the Securities Purchase Agreement, the AAXT Investors delivered the Purchase Price to Tri-State Title & Escrow, LLC (the "Escrow Agent"), which served as escrow agent in the transaction, in accordance with the terms of the Closing Escrow Agreement dated as of April 14, 2008 (the "Closing Escrow Agreement"). The Closing Escrow Agreement is attached hereto as Exhibit B.
>
> 23. Tri-State Title & Escrow, LLC is a

> company based in Providence, Rhode Island, that provides escrow services for real estate and corporate transactions throughout the United States.
>
> 24. As referenced in Section 2.1 of the Closing Escrow Agreement, the AAXT Investors paid the Purchase Price on the Closing by collectively wiring funds to the Escrow Agent's bank account at Access National Bank in Reston, Virginia (the "Escrow Account").
>
> 25. AAXT issued, and the AAXT Investors took title to, the AAXT Shares upon, among other things, (i) payment by the AAXT Investors of the Purchase Price into the Escrow Account, (ii) filing by AAXT of its Amended Certificate of Designations, Preferences and Rights of Series A Senior Convertible Preferred Stock with the Secretary of State of Delaware, a copy of which is attached hereto as Exhibit C, and (iii) the issuance of stock certificates to the AAXT [Investors] evidencing their purchase and ownership of the AAXT Series A Shares.

The Securities Purchase Agreement covering the AAXT purchase transaction sufficiently reflects the parties' commitments to show their irrevocable liability for the purchase of the AAXT shares. That agreement states:

> Section 1.4 Purchase Price and Closings. Subject to the terms and conditions hereof, the Company agrees to issue and sell to the Purchasers and, in consideration of and in express reliance upon the representations, warranties, covenants, terms and conditions of this Agreement, the Purchasers, severally but not jointly, agree to purchase the Units for an aggregate purchase price of $3.13 per Unit (the "Purchase Price"). The initial closing of the purchase and sale of the

11

> Units to be acquired by the Purchasers shall take place at the offices of Guzov Ofsink, LLC, 600 Madison Avenue, 14th Floor, New York, NY 10022 (the "Initial Closing") at 2:00 p.m., New York time on such date as the Purchasers and the Company may agree upon; provided, that all of the conditions set forth in Article IV hereof and applicable to the Initial Closing shall have been fulfilled or waived in accordance herewith (the "Initial Closing Date").
>
> . . . .
>
> Section 2.2(b) Representations and Warranties of the Purchasers. . . . This Agreement and each of the other Transactions Documents to which such Purchaser is a party has been duly authorized, executed and delivered by such Purchaser and constitutes, or shall constitute when executed and delivered, a valid and binding obligation of such Purchaser enforceable against such Purchaser in accordance with the terms thereof.

Third Am. Compl. Ex A.

Accordingly, once the parties signed the Securities Purchase Agreement, the signing purchaser had no right to unilaterally withdraw from his purchase obligation, and the AAXT Investors incurred irrevocable liability when they signed that agreement.

The third amended complaint alleges that all of the purchasers are United States residents, justifying the inference that the parties entered into the Security Purchase Agreement in the United States, at least until contrary evidence is produced.

Deheng argues that, because the alleged fraud occurred at the subsidiary (and offshore) level of the ABM and Anhante purchases rather than the AAXT transaction itself, the fraud does not fall under United States courts' jurisdiction under Morrison. The argument is seductive, but unavailing: a fraudulent misrepresentation which induces a domestic securities transaction suffices for a 10b-5 violation, regardless of whether the misrepresentation concerned a domestic or foreign event.

Deheng's motion to dismiss for failure to satisfy Morrison is denied.

### B.

### 1.

Plaintiffs' first amended complaint was dismissed because it did not sufficiently allege that Deheng acted with scienter in committing the alleged securities fraud.

In that first amended complaint, plaintiffs attempted to allege multiple theories of scienter.

First, plaintiffs alleged that Deheng advised "Shao and/or Kamick" to misappropriate "most or all of the AAXT investment without the consent of the AAXT Investors," and to divert "that money into Shao's own personal bank accounts in his name, other entity accounts controlled by Shao, and also into at least one account controlled by Lv." Am. Compl. ¶ 41. Such allegations

13

failed to state a claim because "There are no allegations, however, of particularized facts forming the basis for the belief that Deheng provided that advice." Pope Invs. II LLC v. Deheng Law Firm, 10 Civ. 6608 (LLS), 2011 WL 5837818, at *11 (S.D.N.Y. Nov. 21, 2011).

Second, plaintiffs alleged that Deheng knowingly misrepresented the legitimacy of the SMT Transactions, but did not specifically identify any report or statement from which defendants should have learned that Shao intended to embezzle the money or that the SMT Transactions were a sham, or that the invested funds were not flowing as intended, and thus did not present a strong inference of scienter. Id. at *12-13. Allegations that Deheng failed to investigate Shao, was obliged to disclose to plaintiffs facts about Shao, or that Deheng knew or should have known about Shao's control of ABM, were insufficient because plaintiffs did not allege what sources of information would have revealed to Deheng the intended fraud. See id. at *13-15.

Finally, plaintiffs alleged in their first amended complaint that Deheng had motive because Deheng wanted the deal to close so it would receive its professional fees, but "'allegations of the motivation to receive fees for services' do not 'suffice to establish motive,' as 'All firms in the securities industry want to increase profits and all individuals

14

are assumed to desire to increase their compensation.'" Id. at 15, quoting In re Merrill Lynch & Co. Research Reports Sec. Litig., 289 F. Supp. 2d 416, 428 (S.D.N.Y. 2003).

### 2.

Plaintiffs' scienter allegations in the third amended complaint are nearly identical to those in the first amended complaint. In addition to the allegations previously held insufficient, the third amended complaint also alleges that the diverted funds were transferred into bank accounts controlled by Lv, see Third Am. Compl. ¶¶ 46, 50, 89, 107, and that "In this way, Lv, as a partner of Deheng, benefitted directly from the fraud itself," id. ¶ 49, but makes no other additional allegations in support of scienter.

In their brief opposing Deheng's motion to dismiss the third amended complaint, plaintiffs argue that they sufficiently plead Deheng's scienter because "plaintiffs have alleged that Defendant Lv, acting as an agent of this defendant, participated and personally benefitted from the fraud," Pls' Br. at 1.

Even if Deheng could be held vicariously liable through Lv, the third amended complaint must plausibly allege, beyond mere suspicion and conjecture, Lv's participation in the fraudulent scheme. It is not enough to point to circumstances which are not inconsistent with her guilt. There must be facts from which one can plausibly infer her knowledge and participation in

15

Shao's plan to misappropriate the AAXT investment.

Plaintiffs allege that "At some time during 2007, Shao consulted with Lv at Deheng regarding his intention to embezzle the money invested by the AAXT Investors in AAXT away from the Group," Third Am. Compl. ¶ 42, and that Lv "help[ed] devise a scheme by which Shao, Kamick and/or Lv stole more than $10 million from ABM, and [failed] to disclose the conflict of interest and personal benefit arising from her personal relationship with Shao," id. ¶ 63.

No support for those charges is offered except that "Lv was one of the lead Deheng attorney [sic] assigned by Deheng to represent the Group in connection with the SMT Transactions . . . [and was] Shao's wife," id. ¶ 52, and that "A portion of the embezzled funds were transferred directly to Jerga Management Limited, a company in which Lv of Deheng acts as a director and has an express financial interest," id. ¶ 49. While those allegations are consistent with Lv's being a coconspirator in Shao's fraudulent scheme, they fall far short of justifying the inference that Lv was a participant, or knew about Shao's intention to steal the investment money. There is no support except speculation that Shao informed Lv about his intention to embezzle the money. For all that appears, she was totally ignorant of Shao's plans (and this is plaintiffs' third opportunity to show something to the contrary). As to the

16

alleged deposit of some of the embezzled investment proceeds in Jerga Management Limited accounts, with no indication of how many other directors than Lv are on its board, the extent to which Lv is involved in company management, whether she had personal access to any company funds, or the relative size of the deposit in comparison to Jerga Management Limited's other assets, there is no possible way to speculate about whether she was even aware of the deposit.

Taken singly or as a whole, those allegations do not give rise to the required strong inference of Lv's scienter.

Deheng's motion to dismiss for lack of a sufficient showing of scienter on Lv's part is granted.

## The State Law Claims

The Court once more declines to exercise supplemental jurisdiction over plaintiffs' state law claims, there being no independent basis for this Court's jurisdiction over those claims. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if the district court has dismissed all claims over which it has original jurisdiction."). Those claims are therefore dismissed.

## Conclusion

Deheng's motion to dismiss plaintiffs' third amended complaint (Dkt. No. 120) is granted.

So ordered.

Dated: New York, New York
       July 31, 2013

                                                 *Louis L. Stanton*
                                                 Louis L. Stanton
                                                       U.S.D.J.